No. 98-455

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 127

294 Mont. 461

982 P.2d 453

STATE OF MONTANA,

Plaintiff and Respondent,

v.

SHAWN R. McBRIDE,

Defendant and Appellant.

No

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

Honorable Maurice R. Colberg, Jr., Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Jack E. Sands, Attorney at Law, Billings, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Micheal S. Wellenstein,

Assistant Attorney General, Helena, Montana

Dennis Paxinos, County Attorney; Sheila Kolar, Deputy County Attorney,

Billings, Montana

Submitted on Briefs: May 13, 1999

Decided: June 3, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. The Thirteenth Judicial District Court, Yellowstone County, denied Shawn R. McBride's motion to suppress certain evidence seized from his person. McBride appeals. We reverse and remand.**

**¶2. The issue is whether probable cause and exigent circumstances supported police officers' entry into McBride's residence without a warrant and without permission.**

**¶3. On February 27, 1998, sixteen-year-old runaway A.H. made a telephone call to her father from a house rented by Shawn McBride in Billings, Montana. A.H.'s father discerned the location from which A.H. was calling via the caller identification feature on his telephone.**

**¶4. A.H.'s father called the local police department and reported the location of his runaway daughter. He told the officer that there was also another runaway at that address and that A.H. was there in violation of her probation. He asked that police officers be sent to the address "pronto." A.H.'s father went to the address along with the two responding police officers and a police "ride along."**

**¶5. When he approached the front door of the house, Billings Police Officer Randy Helderop saw no signs of ongoing criminal activity. He knocked on the door but no**

one answered. He knocked again and turned the door knob, whereupon the door cracked open. Inside, McBride saw Officer Helderop through the crack and tried to shut the door. Officer Helderop prevented McBride from doing so by pushing on the door, which swung open.

¶6. When the door opened, Officer Helderop saw McBride, who appeared to be under the age of 21, with a beer in his hand. Officer Helderop asked McBride if he could come in and talk, and McBride said, "No." Officer Helderop nevertheless entered the house.

¶7. Once inside, Officer Helderop could see a young woman, later identified as A.H., sitting in the living room. McBride and another young man in the room admitted that they were under the age of 21, and Officer Helderop cited them for being minors in possession of alcohol. Officer Helderop ran a warrant check on all of the persons in the house and discovered an outstanding arrest warrant on McBride, whom he then placed under arrest.

¶8. Officer Helderop transported McBride to the Yellowstone County Detention Facility. There, during an inventory search, methamphetamine was discovered in a folded paper bindle inside a cigarette pack in McBride's pocket.

¶9. Prior to trial, McBride moved to suppress statements he made and the evidence seized from him on February 27, 1998. He argued that Officer Helderop's warrantless entry into his residence to search for a runaway was impermissible. The prosecutor argued that the entry into McBride's residence was permissible because the police officers were attempting to investigate and search for a runaway under their duty to protect and serve the public. After a hearing, the District Court denied the motion to suppress. McBride pled guilty to possession of dangerous drugs and possession of drug paraphernalia, reserving the right to appeal the court's decision on his motion to suppress.

## Discussion

¶10. Did probable cause and exigent circumstances support police officers' entry into McBride's residence without a warrant and without permission?

¶11. This Court's standard of review of a denial of a motion to suppress is twofold.

We review findings of fact to determine whether they are clearly erroneous, and conclusions of law de novo. *State v. Vickers*, 1998 MT 201, ¶ 10, 964 P.2d 756, ¶ 10, 55 St.Rep. 859, ¶ 10. In the present case, the facts relating to Officer Helderop's entry into McBride's home are undisputed. In dispute are the validity of the District Court's legal conclusions that those facts constituted probable cause and exigent circumstances justifying entry without a warrant.

¶12. Both the Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect persons from unreasonable searches and seizures. Warrantless searches and seizures conducted inside a home are per se unreasonable, subject to a few narrowly drawn exceptions. *State v. Wakeford*, 1998 MT 16, ¶ 21, 287 Mont. 220, ¶ 21, 953 P.2d 1065, ¶ 21.

¶13. In order to justify a warrantless entry under the exigent circumstances exception to the warrant requirement argued before the District Court, both exigent circumstances and probable cause must be established. *Wakeford* at ¶ 22. The State bears a heavy burden of showing the existence of exigent circumstances by demonstrating specific and articulable facts in support thereof. *Wakeford* at ¶ 24 .

¶14. Probable cause exists if the facts and circumstances within an officer's personal knowledge or imparted to the officer by a reliable source are sufficient to justify a belief in a reasonable person that the suspect has committed an offense. *State v. Dow* (1992), 256 Mont. 126, 129, 844 P.2d 780, 782-83. At the time he entered McBride's home, Officer Helderop had no evidence that a suspect therein had committed an offense; in fact, he did not even know McBride was there. Officer Helderop had no indication that a felony was being committed; no crimes of violence were committed or threatened during any of the events surrounding the investigation of this matter; and he had observed no suspected illegal activity at the house. A.H.'s father testified at the suppression hearing that he did not relate to the officers that his daughter was being threatened or held against her will. He also testified that he had no reason to believe that McBride or any person in McBride's house had caused his daughter to be absent from home.

¶15. Based on the evidence produced at the suppression hearing, the facts and circumstances within Officer Helderop's personal knowledge or imparted to him by a reliable source were not sufficient to justify in a reasonable person a belief that McBride had committed any offense. We conclude that there was no probable cause

for Officer Helderop to forcibly enter McBride's home.

¶16. Further, there were no exigent circumstances to support a compelling need for official action without first securing a warrant. Exigent circumstances are those circumstances which would cause a reasonable person to believe that prompt action, such as entry, is necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts. *Wakeford* at ¶ 24.

¶17. In this case, there was adequate time to secure a warrant before entering McBride's home--it was in the middle of a working day and Officer Helderop was in radio contact with police headquarters. There was no suspected danger to the girl in the house. Officer Helderop testified that he did not call for additional backup and did not even check with police headquarters about getting a search warrant before entering McBride's home.

¶18. The State argued before the District Court and again argues on appeal that there was always a fear that A.H. might try to run out of McBride's house. However, Officer Helderop was specifically asked at trial, "Did you have any evidence that anybody was about to run?" He answered, "Not that I recall, no." The facts as elicited at the suppression hearing in this case do not meet the standard of specific and articulable facts required to justify a finding of exigent circumstances under *Wakeford*.

¶19. On appeal, the State also argues that warrantless entry into McBride's home was justified under the emergency doctrine exception to the warrant requirement. Although this theory was not argued at trial, the State urges that this Court should not reverse the decision of a district court if that court reached the right result, even if for the wrong reason. *See State v. Huether* (1997), 284 Mont. 259, 264, 943 P.2d 1291, 1294.

¶20. A number of jurisdictions have recognized and applied the emergency doctrine exception. *See Mincey v. Arizona* (1978), 437 U.S. 385, 392-93, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 299-300. Montana, however, has not yet recognized this exception to the warrant requirement. More importantly, the State did not raise the theory of the emergency doctrine exception at the suppression hearing in the District Court. We

decline to address the application of such a doctrine on appeal where neither party raised the issue at the trial level. *See State v. Anderson*, 1999 MT 60, ¶25, ___ P.2d ___, ¶ 25, 56 St.Rep. 252, ¶ 25.

¶21. In summary, the District Court's conclusions that probable cause and exigent circumstances supported the police officers' warrantless entry into McBride's home were wrong. We therefore reverse the order of the District Court denying McBride's motion to suppress evidence seized as a result of that warrantless entry.

¶22. This case is remanded to the District Court for further proceedings consistent with this Opinion.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART