No. 01-194

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 211

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

KATHY OLSON,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                      In and for the County of Yellowstone,
                      The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Kristina Guest, Assistant Appellate Defender, Helena, Montana

        For Respondent:

        Hon. Mike McGrath, Attorney General; Jim Wheelis,
        Assistant Attorney General, Helena, Montana

        Dennis Paxinos, Yellowstone County Attorney; Sheila R. Kolar,
        Deputy County Attorney, Billings, Montana


                      Submitted on Briefs:  February 7, 2002

                                Decided:  September 17, 2002

Filed:

               _____
                            Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    Kathy Olson (Olson) appeals from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, on her convictions for criminal possession of dangerous drugs and criminal possession of dangerous drugs with intent to sell.  We reverse and remand.

¶2    The issue on appeal is whether the District Court erred in denying Olson's motion to suppress evidence.

BACKGROUND

¶3    On December 10, 1999, Yellowstone County Deputy Sheriffs Shane Skillen (Skillen) and Steve Corson (Corson) went to Olson's home to arrest her pursuant to a warrant issued as a result of her failure to appear at a justice court hearing.  After knocking on the front door and receiving no response, Skillen went around to the back door of the residence.  As Skillen approached the back, Brian Aichele (Aichele), who also resided in the home, exited the back door.  Skillen asked Aichele whether Olson was home and Aichele responded that she was.  Aichele reentered the house, followed by Skillen and Corson.  The back entrance led into a laundry room where Aichele paused and called several times to Olson.  Olson did not respond.  Aichele informed Skillen that Olson was in the living room.  Skillen also called to Olson and, again, she did not respond.  Skillen then walked through the laundry room into the kitchen.  As he began to cross the kitchen, Olson entered the kitchen through the doorway from the living room.

2

¶4    After Olson identified herself, Skillen informed her she was under arrest and Corson handcuffed her. Skillen asked whether there was anyone else in the residence, and both Olson and Aichele stated there was not. At that point, Skillen was standing at the door between the kitchen and the living room. He looked into the living room and observed a marijuana bong on the coffee table. Aichele then became agitated and began yelling at Olson. Skillen handcuffed Aichele and informed him he would be detained until the deputies determined what they were going to do.

¶5    After handcuffing Aichele, Skillen conducted a search of the living room, bathroom and bedroom of the house, locating what he believed to be drugs and drug paraphernalia in each room. Aichele was then taken from the house and placed in the deputies' vehicle while Olson remained in the kitchen. Shortly thereafter, Detective Evans (Evans) of the City-County Special Investigations Unit arrived. Evans asked Aichele for permission to search the house and Aichele signed a form consenting to the search. Evans and Skillen reentered the house and requested Olson to consent to a search; she also signed a consent form. Olson was removed from the house at that time and another search was conducted, resulting in the discovery of drugs and drug paraphernalia. Olson later was taken to the Yellowstone County Detention Facility where she gave a taped statement to a deputy.

¶6    The State of Montana (State) charged Olson by information with the offenses of felony criminal possession of dangerous drugs, felony criminal possession of dangerous drugs with intent to sell,

3

misdemeanor criminal possession of dangerous drugs and misdemeanor criminal possession of drug paraphernalia. She subsequently moved to suppress both the evidence found in her home and her taped statement on the basis that the search of her home violated her right to be free from unreasonable searches and seizures as guaranteed by the United States and Montana Constitutions and her right to privacy under the Montana Constitution. The District Court held a hearing, following which it orally denied the motion. Olson then pleaded guilty to the offenses of felony criminal possession of dangerous drugs with intent to sell and misdemeanor criminal possession of dangerous drugs, pursuant to a plea agreement in which she expressly reserved her right to appeal the District Court's denial of her motion to suppress. The District Court sentenced Olson and entered judgment. Olson appeals.

## STANDARD OF REVIEW

¶7 We review a district court's ruling on a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether its interpretation and application of the law are correct. State v. Nalder, 2001 MT 270, ¶ 5, 307 Mont. 280, ¶ 5, 37 P.3d 661, ¶ 5.

## DISCUSSION

¶8 Did the District Court err in denying Olson's motion to suppress evidence?

¶9 Both the Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution guarantee the right to be free from unreasonable searches and seizures. It

4

is well-established that a warrantless search is *per se* unreasonable absent the existence of one of a few narrow exceptions to the warrant requirement. See, e.g., State v. Elison, 2000 MT 288, ¶ 39, 302 Mont. 228, ¶ 39, 14 P.3d 456, ¶ 39; State v. McBride, 1999 MT 127, ¶ 12, 294 Mont. 461, ¶ 12, 982 P.2d 453, ¶ 12; State v. Rushton (1994), 264 Mont. 248, 257, 870 P.2d 1355, 1361. In her motion to suppress, Olson advanced a variety of arguments supporting her contention that the drug evidence and her taped statement were obtained in violation of her constitutional right to be free from unreasonable searches and seizures, as well as her right to privacy. In response, the State argued that, notwithstanding the absence of a search warrant, the searches of Olson's home were justified by various exceptions to the warrant requirement. The District Court denied the motion to suppress, concluding that the marijuana bong was in plain view, Skillen's initial search was justified as a protective sweep of the residence during which he observed more drugs and drug paraphernalia in plain view, the second search was authorized by Olson's written consent and, because the searches were not illegal, Olson's subsequent statement was given voluntarily. Olson asserts error.

¶10 Olson first argues that the District Court's determination that the marijuana bong on the coffee table in the living room was in Skillen's plain view is erroneous. The plain view doctrine is a recognized exception to the warrant requirement which "begins with the premise that the police officer had a prior justification for an intrusion, in the course of which he came inadvertently across a

piece of evidence incriminating the accused." State v. Loh (1996), 275 Mont. 460, 468-69, 914 P.2d 592, 597 (citing Coolidge v. New Hampshire (1971), 403 U.S. 443, 465-66, 91 S.Ct. 2022, 2037-38, 29 L.Ed.2d 564, 582-83). Thus, because the doctrine presupposes the law enforcement officer was lawfully on the premises at the time the evidence is observed, the doctrine authorizes the seizure of--rather than the search for--evidence without a warrant. To justify seizing evidence under the plain view doctrine, a law enforcement officer must be lawfully located in a place from which the evidence can be plainly seen, the incriminating nature of the evidence must be immediately apparent and the officer must have a lawful right of access to the object. Loh, 275 Mont. at 473, 914 P.2d at 600.

¶11 At the close of the hearing on the motion to suppress, the District Court made the oral finding of fact that Skillen "could see from where he was standing in the kitchen doorway . . . enough of the living room to see the bong on the coffee table." The court concluded, based on that finding, that the marijuana bong was within Skillen's plain view and could be seized as evidence without the necessity of a warrant. Olson concedes Skillen's presence in her kitchen was lawful. Under Loh, the next question is whether Skillen could plainly see the bong from his lawful location in the kitchen. In that regard, Olson contends the bong was not in Skillen's plain view because it could not be observed readily from his location in the kitchen without at least partially entering a portion of her home where he was not lawfully entitled to be.

6

¶12   Skillen testified at the hearing that he was standing next to the refrigerator by the door between the kitchen and living room at the time he observed the bong.  He further testified, however, that the kitchen and living room are separated by a short hall approximately one and one-half feet long and, in order to observe the marijuana bong on the coffee table, he was required to lean in through the door between the kitchen and living room.  Indeed, his testimony contains numerous statements that he had to lean around the wall between the kitchen and living room in order to see the bong.  We conclude that, by leaning through the doorway, Skillen entered a portion of the residence not included within the boundaries of his lawful presence in the kitchen.  Consequently, the District Court's finding that Skillen could see the bong from his location in the kitchen is not supported by substantial credible evidence and is, therefore, clearly erroneous.  We further conclude that, because the court's finding that Skillen observed the marijuana bong from a place where he was lawfully located is clearly erroneous, its conclusion--based on that finding--that the bong was in Skillen's plain view from the kitchen is incorrect.

¶13   The State argues, however, that the District Court correctly concluded the marijuana bong, as well as the other drugs and drug paraphernalia later observed by Skillen, are admissible evidence. At the close of the hearing on the motion to suppress, the District Court stated that, even if the marijuana bong was not in Skillen's plain view from the kitchen, all of the evidence was in plain view when Skillen made his initial search of the residence.  The court

further determined that this search, although conducted without a warrant, was justified as a "protective sweep" incident to a lawful arrest, stating that "Officer Skillen is never going to make it to retirement alive if he doesn't check out the premises upon which an arrest is being performed." The court further stated that

> I think that an arrest [is] a situation that is fraught with danger. There could be others there in the house that they don't know about. Whether they hear them or not doesn't mean they are or are not there, but they're certainly justified in checking. Now, when they go around checking, of course they're not supposed to put on blinders when they're doing the arrest, and they're not supposed to put on blinders when they're checking the rest of the rooms for anybody else that might be there that might pose a danger. And when they see contraband in plain view, they're not bound to forget about it or not pay any attention to it. We have drugs and paraphernalia in plain view . . . .

The State cites Chimel v. California (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, in support of its argument that Skillen's initial search of Olson's home was legal.

¶14 When an arrest is made, it is reasonable for a law enforcement officer to search the person arrested and the area within that person's immediate reach in order to locate any weapons the person might use or secure evidence which may be concealed or destroyed. Chimel, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694; see also § 46-5-102, MCA. Such a search generally must be limited to the immediate locale of the arrest. "There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs . . . ." Chimel, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694; see also Maryland v. Buie (1990), 494 U.S. 325, 333, 110 S.Ct. 1093, 1097, 108 L.Ed.2d 276,

8

285. Here, Olson's arrest occurred in her kitchen and it is clear that Skillen's initial search of Olson's home in areas other than the kitchen went beyond the boundaries of a search incident to a lawful arrest as outlined in Chimel.

¶15 The United States Supreme Court has held, however, that an arresting officer also may make a precautionary "protective sweep" by looking in other spaces immediately adjoining the place of arrest in order to ascertain that there are no other persons who are dangerous and could launch an unexpected attack and that such a search does not violate the arrestee's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. Buie, 494 U.S. at 333-34, 110 S.Ct. at 1098, 108 L.Ed.2d at 286. In order to justify a search as a protective sweep, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 333-34, 110 S.Ct. at 1098, 108 L.Ed.2d at 286.

¶16 The State argues that Skillen's search was justified as a protective sweep. In response, Olson contends the State failed to present specific articulable facts supporting a determination by Skillen that a protective sweep was necessary. Skillen testified that both Olson and Aichele informed him no one else was in the house at the time of the arrest. He also testified he did not hear voices or observe any other indications that there might be someone

9

else in the residence; nor did he believe that either Olson or Aichele presented a danger to the deputies. Indeed, Skillen did not testify to a single articulable fact creating a reasonable belief on his part that there was anyone else in the residence who might pose a danger. We conclude that Skillen's first search of Olson's home was not justified as a protective sweep as outlined in Buie and, consequently, it violated Olson's right to be free from unreasonable searches and seizures pursuant to the Fourth Amendment to the United States Constitution.

¶17 Olson also argued in the District Court that Skillen's initial search of her home exceeded the parameters of a search incident to a lawful arrest pursuant to § 46-5-102, MCA, and violated her right to be free from unreasonable searches and seizures and her right to privacy as guaranteed by the Montana Constitution. See Art. II, Secs. 10 and 11, Mont. Const. Section 46-5-102, MCA, provides that, when a law enforcement officer effects a lawful arrest, it is reasonable for the officer to search the arrestee and the area within the arrestee's immediate presence in order to protect the officer from attack, prevent the arrestee from escaping, discover and seize fruits of the crime, or discover and seize any people or items which may have been used in committing--or constitute evidence of--a crime. In order to render lawful a search incident to arrest under § 46-5-102, MCA, the State must demonstrate that specific and articulable exigent circumstances existed justifying the search. State v. Hardaway, 2001 MT 252, ¶ 57, 307 Mont. 139, ¶ 57, 36 P.3d 900, ¶ 57.

10

¶18 In response to Olson's argument that Skillen's first search was not justifiable as incident to a lawful arrest, the State "acknowledges that existing authority requires specific information at least suggesting the possibility of danger to officers before they may conduct a protective sweep" and tacitly concedes that Skillen had no such specific information at the time he conducted his search. Notwithstanding this lack of specific information, the State contends that the search was legal because it was conducted in a reasonable manner. The State cites no authority supporting this proposition and, therefore, we refuse to address it further. See Rule 23(a)(4), M.R.App.P. Furthermore, because we concluded above that Skillen's first search of Olson's home violated her rights under the Fourth Amendment to the United States Constitution, it is not necessary to address whether that search also violated her rights as guaranteed by the Montana Constitution.

¶19 Olson next contends that the District Court erred in denying her motion to suppress the drugs and drug paraphernalia found during the second search based on its conclusion that her written consent to that search was voluntary. The District Court stated at the close of the hearing that

> it was explained to them that they didn't have to sign the consent. They signed the consent because, right or wrong, they thought it didn't make any difference at that point. I think both of them testified, basically, in that fashion, but they certainly didn't make [sic] to this Court that they were threatened or coerced; that their consent wasn't voluntary.

¶20 The knowing and voluntary consent by a citizen to a search is a recognized exception to the warrant requirement. Rushton, 264

11

Mont. at 257, 870 P.2d at 1361. The prosecution carries the burden of establishing that consent to a warrantless search was freely and voluntarily given and uncontaminated by any express or implied duress or coercion. Rushton, 264 Mont. at 257-58, 870 P.2d at 1361.

¶21 The State asserts that Olson's consent to the search was voluntary because she was read her Miranda rights prior to consenting and informed she could refuse to consent, the consent form she signed reiterated her right to refuse, and she was not threatened or otherwise coerced by law enforcement to consent. However, knowledge of the right to refuse to consent is only one factor to be considered and is not determinative of the question of whether consent was voluntary; rather, we must consider the totality of the circumstances surrounding the giving of the consent. Rushton, 264 Mont. at 258, 870 P.2d at 1361. In that regard, Olson testified at the hearing on the motion to suppress that she consented to the search of her home because Skillen had already searched the home and found drugs and drug paraphernalia and, consequently, she thought her consent was irrelevant. She argues that these circumstances override the fact that she knew she could refuse and her consent cannot be considered voluntarily and freely given because it resulted from a prior illegal search. We agree.

¶22 Consent to a search is not voluntary where it is given only after law enforcement already has conducted an illegal search because the consent flows directly from the unlawful intrusion.

12

State v. Romain, 1999 MT 161, ¶ 21, 295 Mont. 152, ¶ 21, 983 P.2d 322, ¶ 21; State v. Bullock (1995), 272 Mont. 361, 385, 901 P.2d 61, 76. Here, Olson consented to the search by Skillen and Evans shortly after Skillen's initial warrantless search of the residence and the consent flowed directly therefrom. We concluded above that Skillen's search was unlawful. Consequently, we conclude that Olson's subsequent consent to search, a direct product of the unlawful search, was not voluntarily and freely given and the evidence obtained during the search must be suppressed. The District Court's conclusion to the contrary is incorrect.

¶23 Finally, Olson argues that the District Court erred in refusing to suppress the taped statement she made after she was taken to the detention facility as "fruit of the poisonous tree" because it was obtained as the direct result of the unlawful searches. Incriminating statements gathered as the result of an unlawful search are inadmissible by virtue of the exclusionary rule. State v. Bassett, 1999 MT 109, ¶ 58, 294 Mont. 327, ¶ 58, 982 P.2d 410, ¶ 58. Consequently, we conclude that the District Court erred in not suppressing Olson's statement which flowed from the unlawful searches of her home.

¶24 In sum, we conclude that the drug and drug paraphernalia evidence found in Olson's home should have been suppressed as having been obtained via illegal searches and an involuntary written consent to search, and that her subsequent statement to law enforcement should have been suppressed pursuant to the exclusionary rule. Based on these conclusions, we hold that the

13

District Court erred in denying Olson's motion to suppress evidence.

¶25  Reversed and remanded for further proceedings consistent with this opinion.

/S/ KARLA M. GRAY

We concur:


/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART