JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Scott L. Wetzel (Wetzel) was charged with, and ultimately pled guilty to, felony criminal possession of dangerous drugs. He appeals the Fifth Judicial District Court’s denial of his Motion to Suppress. We affirm.
ISSUE
¶2 Did the District Court err in denying Wetzel’s Motion to Suppress?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 At approximately 10:30 p.m. on March 12, 2003, officers responded to an attempted shoplifting call from the Montana City Store. The suspects, later identified as Maria and Scott Wetzel, had left the store by the time the officers arrived, but had driven across the street and entered the Jackson Creek Saloon. As the officers entered the Saloon, they recognized Maria-based upon the store clerk’s detailed description-just as she was entering the women’s bathroom. They also noticed Wetzel, again from the clerk’s description, standing near the gaming machines. Responding officer Deputy Grimsrud directed a female Saloon employee to ask Maria to come out of the bathroom. The employee entered the bathroom and returned, reporting that Maria said she would be out shortly. The employee also advised that Maria was putting some things in the water tank of a toilet. Grimsrud entered the bathroom, detained Maria, checked the toilet tank, and seized two spoons from the tank and one liquid-filled syringe from the floor. Subsequent testing established that the liquid in the syringe was methamphetamine.
¶4 Grimsrud escorted Maria out of the Saloon where Officer Rogstad *415 had detained Wetzel. The officers conducted weapons searches of both Wetzel and Maria and found no weapons. Both Wetzel and Maria were handcuffed. Maria then gave the officers consent to search her vehicle. Among other incriminating items, the officers found three more spoons and another syringe. Deputy Grimsrud determined that Maria was on probation and following a telephone conversation with Maria’s probation officer, Grimsrud arrested her for the probation violation of being in a bar and for possible possession of dangerous drugs and drug paraphernalia. Maria was placed in the back seat of the officer’s patrol car. After determining that Wetzel was not on probation, his handcuffs were removed and he was told that he could leave.
¶5 It is at this point that Wetzel’s report of the events differs from Grimsrud’s. Wetzel maintained that after he was told he could leave, the officers said they needed to search him one more time, and that it was during this search that Officer Rogstad found an unlabeled brown plastic pharmacy pill bottle in Wetzel’s coat pocket. The bottle contained several pills that were visible through the bottle. When asked what the pills were, Wetzel testified that he did not answer because he did not know what they were.
¶6 Grimsrud, on the other hand, testified that after Wetzel was told he could leave, he asked to get into the backseat of the patrol car with his wife before he left. Wetzel had been speaking to his wife through the open back door of the patrol car. Grimsrud stated that he did not want to deprive the couple of the opportunity to speak privately, but determined that he first needed to conduct a contraband search of Wetzel, which had not been done at the time Wetzel was searched for weapons. The deputy asked for Wetzel’s consent to another search, explaining that he would be looking for contraband, specifically drugs, that Wetzel could possibly pass to his wife while in the car. According to Grimsrud, Wetzel agreed to the search.
¶7 It is undisputed that Grimsrud did not tell Wetzel he had the right to refuse the search. Grimsrud maintained, however, that Wetzel understood that the only consequence of refusing the search was that Wetzel would not be allowed in the patrol car with his wife. After Rogstad discovered the pill bottle in Wetzel’s pocket, Grimsrud claims that Wetzel told the officers the pills were Benadryl. Grimsrud, who has suffered from allegeries for many years, could tell by looking at the pills that they were not Benadryl.
¶8 Both Wetzel and Grimsrud testified that Grimsrud then seized the pills and told Wetzel he was free to go. The officers then left with Maria en route to the Sheriffs Office. After arriving at the Sheriffs *416 Office, Grimsrud called the St. Peter’s Hospital pharmacist. The deputy removed the pills from the pill bottle and read the imprinted numbers and letters to the pharmacist. The pharmacist identified the pills as dextroamphetamine, a highly controlled drug.
¶9 Wetzel was subsequently arrested and charged with criminal possession of dangerous drugs. On November 4, 2003, Wetzel filed a Motion to Suppress Evidence seeking suppression of the pill bottle and its contents. The District Court conducted a hearing on Wetzel’s Motion and after considering the conflicting testimony, ultimately ruled from the bench at the end of the hearing. The court denied the Motion on the grounds that Wetzel had consented to the search and that it was objectively reasonable under the circumstances for the officers to search the closed container. It is from the District Court’s denial of his Motion to Suppress Evidence that Wetzel appeals.
STANDARD OF REVIEW
¶10 The standard of review of a district court’s denial of a motion to suppress evidence is whether the court’s findings are clearly erroneous. To determine whether a finding of fact is clearly erroneous, this Court ascertains whether the finding is supported by substantial evidence, whether the district court misapprehended the effect of the evidence, and whether the Court is nevertheless left with a definite and firm conviction that the district court made a mistake. We further review a district court’s denial of a motion to suppress to determine whether the court’s interpretation and application of the law are correct. This Court’s review is plenary as to whether the district court correctly interpreted and applied the law. State v. Martinez, 2003 MT 65, ¶ 19, 314 Mont. 434, ¶ 19, 67 P.3d 207, ¶ 19 (internal citations omitted).
¶11 It is not this Court’s function, on appeal, to reweigh conflicting evidence or substitute our evaluation of the evidence for that of the district court. In re A.F., 2003 MT 254, ¶ 24, 317 Mont. 367, ¶ 24, 77 P.3d 266, ¶ 24 (citations omitted). In cases in which the district court must resolve conflicting testimony, if substantial evidence supports the district court’s factual findings, then such findings are not clearly erroneous. Bonnie M. Combs-Demaio Liv. Trust v. Colony, 2005 MT 71, ¶ 16, 326 Mont. 334, ¶ 16, 109 P.3d 252, ¶ 16. We defer to the district court in cases in which conflicting testimony is presented because we recognize that the court had the benefit of observing the demeanor of witnesses and rendering a determination of the credibility of those witnesses. In re Marriage of Peetz (1992), 252 Mont. 448, 454, 830 P.2d *417 543, 547.
DISCUSSION
¶12 Did the District Court err in denying Wetzel’s Motion to Suppress?
¶13 Wetzel claims on appeal that the officers committed a series of errors on the evening of March 12, 2003, and that these errors led to the discovery of the controlled substance. To the extent that Wetzel failed to present arguments regarding some of these alleged errors to the District Court, we decline to address them. It is well-established that this Court will not address either an issue raised for the first time on appeal or a party’s change in legal theory. Bekkedahl v. McKittrick, 2002 MT 250, ¶ 31, 312 Mont. 156, ¶ 31, 58 P.3d 175, ¶ 31 (citing Unified Industries, Inc. v. Easley, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15; Day v. Payne (1996), 280 Mont. 273, 276, 929 P.2d 864, 866). We therefore review only the issues presented to and ruled upon by the District Court-did the police legally search Wetzel and seize the pill bottle, and did the police then lawfully identify the bottle’s contents?
¶14 Wetzel argues that even if Grimsrud asked for consent to search him-a contention he disputes-Grimsrud failed to “express the consequences of failure to consent,” and, as a result, if consent was given, it was coerced and invalid. Wetzel also argues that because the pills were not obvious contraband (Grimsrud did not know what.they were by merely looking at them), Grimsrud had no right to seize the pill bottle or to subsequently open it and have its contents identified without first obtaining a warrant.
¶15 The State counters that while the deputy did not “express the consequences of failure to consent,” Wetzel clearly understood that the only consequence of his refusal to consent to the search was that he would not be allowed in the patrol car with his wife. Additionally, the State points out that whether a defendant is told the consequences of failure to consent to a search is only one factor that courts consider when determining whether a defendant’s consent is voluntarily given and is not definitive of whether consent is voluntary. The State further asserts that after Wetzel gave consent to be searched and Rogstad discovered the pill bottle, Wetzel did not revoke his consent. Therefore, it was reasonable for Grimsrud to seize the bottle, open it and identify its contents.
¶16 In State v. Rushton (1994), 264 Mont. 248, 257-58, 870 P.2d 1355, 1361, we explained:
*418 Under the Fourth and Fourteenth Amendments to the United States Constitution, and Article II, Section 11, of the Montana Constitution, warrantless searches and seizures ... are per se unreasonable subject only to a few carefully drawn exceptions. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; State v. Kim (1989), 239 Mont. 189, 779 P.2d 512. One of the recognized exceptions to the warrant requirement arises when a citizen has knowledgeably and voluntarily consented to a search. Schneckloth, 412 U.S. at 219, 93 S.Ct. at 2043; §46-5-101, MCA.
The Schneckloth Court made clear that the Constitution requires that consent be voluntarily given, uncontaminated by any duress or coercion, express or implied. In order to determine whether consent to a search was given voluntarily, this Court has adopted the same test used by the Supreme Court, which is the ‘totality of the circumstances” test. Kim, 239 Mont. at 196, 779 P.2d at 517.
¶17 In determining whether consent was voluntarily given under specific circumstances, this Court has considered various factors including whether the defendant was under arrest at the time consent was requested (State v. Yoss (1965), 146 Mont. 508, 409 P.2d 452); whether consent was sought after the search had already been conducted (State v. Olson, 2002 MT 211, ¶ 22, 311 Mont. 270, ¶ 22, 55 P.3d 935, ¶ 22); whether the defendant had been expressly informed that he or she had the right to refuse to be searched (Olson, ¶ 21); and whether the defendant was threatened or coerced in any manner (Rushton, 264 Mont. at 259, 870 P.2d at 1362-defendants were told that they would be held in custody in their home ‘Tor a number of hours” if they did not consent to a warrantless search).
¶18 The District Court analyzed the ‘Totality of the circumstances” surrounding Wetzel’s consent. In its ruling, the District Court accepted as true Deputy Grimsrud’s testimony that Wetzel had asked to sit in the back seat of the patrol car with his wife. The court also found that after making such a request, the deputy informed Wetzel he had to submit to a “contraband” search. The District Court noted that before asking to join his wife in the officer’s car, Wetzel’s handcuffs had been removed and he was told he was free to go. Additionally, the court found that, after asking for permission to enter the car, Wetzel was free to refuse consent to another search and was still free to go. Wetzel was neither under arrest nor was he threatened with arrest at the time Grimsrud asked for consent to search him. The court also noted *419 that Wetzel had been speaking to his wife through the open door of the patrol car and could have continued to do so without undergoing another search. Lastly, the District Court found that after consenting to the search, Wetzel did not revoke his consent once the pill bottle was discovered; therefore, it was reasonable for Grimsrud to open the pill container and identify the pills within.
¶19 In State v. Stemple (1982), 198 Mont. 409, 412-13, 646 P.2d 539, 541, Stemple-like Wetzel here-argued that his consent to search his truck was involuntarily given because the officers failed to inform him of his right to refuse consent and therefore he could not intelligently give consent. We noted that the U.S. Supreme Court had expressly rejected this argument in Schneckloth, by holding that a subject’s knowledge of a right to refuse is only one of the factors to be taken into account and is not determinative of the questions of voluntariness. We have since applied this analysis and rule in Rushton, 264 Mont. at 258, 870 P.2d at 1361, and Olson, ¶ 21.
¶20 We conclude that the District Court’s findings are amply supported by Grimsrud’s testimony and are not clearly erroneous. Additionally, the court’s legal conclusion that given the facts presented here, Wetzel’s consent was given voluntarily and knowingly, despite his not having been told that he could refuse consent, is a correct interpretation of the law.
¶21 We farther conclude that Grimsrud was legally authorized by virtue of Wetzel’s consent to open the container and identify its contents. In State v. Parker, 1998 MT 6, 287 Mont. 151, 953 P.2d 692, we affirmed the district court’s denial of Parker’s motion to suppress evidence obtained during a vehicle search on the ground that the vehicle owner consented to the search. Parker was a passenger in a friend’s car that was stopped after an officer observed suspicious behavior by some of the occupants of the car. The owner of the car gave the officer permission to search the car and during the search the officer opened a closed fanny pack containing drugs and paraphernalia. It was later determined that the fanny pack belonged to Parker, who was charged with felony possession of dangerous drugs. Parker challenged the introduction of the contents of the fanny pack, arguing that he had not given consent to search the fanny pack. We concluded that the officer could have reasonably believed that the consent to search the vehicle extended to items inside the vehicle. In support, we cited Florida v. Jimeno (1991), 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297, in which the U.S. Supreme Court found that it is not necessary for police who wish to search closed containers in a car *420 to request permission to search each container in the car. We explained “that the basic test of objective reasonableness controls and if an individual’s consent could reasonably be understood to extend to a particular container, a more explicit authorization is not required.” Parker, ¶ 21, citing Jimeno, 500 U.S. at 252, 111 S.Ct. at 1804.
¶22 Based upon the foregoing, the District Court did not err in concluding that Grimsrud was authorized to open the pill bottle and identify the pills within, by virtue of Wetzel’s unrevoked voluntary and knowing consent. As we stated in Parker, ‘Monsent which is given knowingly and voluntarily by an individual with the ability to consent is a recognized exception to the warrant requirement.” Parker, ¶ 20 (citation omitted).
¶23 Finally, we decline to parse Wetzel’s consent, as the Dissent urges. Wetzel, who presumably knew what he was carrying, acquiesced in what was identified for him as a contraband search, and did not in any way qualify his consent. It is illogical to fault the police for seizing articles which are suspected of being contraband, discovered pursuant to a consensual contraband search. Moreover, we note that the Dissent does not question the reasonableness of the contraband search or the manner in which it was conducted. Thus, we are not here confronted with-and need not address-the extreme example of an officer seizing innocuous articles of clothing or personal effects, as described in ¶ 7 of the Dissent.
CONCLUSION
¶24 We therefore affirm the District Court’s denial of Wetzel’s Motion to Suppress.
CHIEF JUSTICE GRAY, JUSTICES WARNER and RICE concur.