DA 06-0257

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 8

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JERRY NICK RUGGIRELLO,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 2005-84
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Joslyn M. Hunt, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

          George H. Corn, Ravalli County Attorney, William Fulbright, Deputy County
Attorney, Hamilton, Montana

Submitted on Briefs:  June 13, 2007

Decided:  January 15, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Appellant Jerry Nick Ruggirello appeals the denial of his motion to suppress by the District Court of the Twenty-First Judicial District, Ravalli County. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     As far back as July of 2002, the Ravalli County Sheriff's Office (RCSO) had received information concerning Ruggirello's involvement in the purchasing of illegal drugs. In January 2005 Detective Jase Basnaw of the RCSO received information from a reliable confidential informant that Ruggirello was distributing large amounts of methamphetamine in Spokane, Washington. Subsequently, a confidential informant, who had previously arranged controlled purchases of illegal drugs for the RCSO, agreed to participate in a controlled buy from Ruggirello in Montana.

¶3     On April 26, 2005, Detective Basnaw received a call from Agent Mike Heaney of the Montana Department of Justice, Division of Criminal Information in Butte, Montana, indicating that Ruggirello and another suspected drug dealer, Rusty O'Connell, were going to transport large quantities of methamphetamine from Spokane for delivery in Missoula, Ravalli, and Silver Bow counties. The confidential informant who provided Agent Heaney this information indicated that O'Connell and Ruggirello would be traveling to Montana in O'Connell's red Nissan pickup. Agent Heaney obtained the truck's license number and forwarded this information to Detective Basnaw.

¶4     On April 27, 2005, Agent Heaney informed Detective Basnaw that O'Connell and Ruggirello were en route to Montana and would arrive in Missoula, Montana around 9:00 p.m. From there, they would travel to Hamilton, Montana and then Butte. Agent Heaney's

2

confidential informant indicated that Ruggirello and O'Connell were in possession of approximately one half-pound of methamphetamine. Detective Basnaw subsequently activated patrol deputies to search for O'Connell's red pickup truck on Highway 93 during the time that O'Connell and Ruggirello were to arrive in Montana. However, the RCSO dispatch center inadvertently broadcast this information over the radio, and it was picked up by O'Connell's mother who informed O'Connell that law enforcement officials were looking for him. As a result, O'Connell and Ruggirello were able to avoid being intercepted by law enforcement officials that night.

¶5     The next day Detective Basnaw learned that O'Connell had been tipped off by his mother the previous evening, and was in hiding with Ruggirello in the environs of Hamilton. Detective Basnaw searched for Ruggirello and O'Connell, but was unable to locate them. Then, on Friday, April 29, 2005, Detective Basnaw received a call from a concerned citizen about possible drug activity at the Court Yard Circle Apartments in Corvallis, Montana. The concerned citizen stated that two "suspicious looking males" were visiting the apartment of a woman named Brandy Bay. Detective Basnaw knew that Bay had recently been evicted from a SAFE housing complex for drug use, and was also aware of allegations that Bay had used drugs in the presence of her toddler. The concerned citizen provided the license plate numbers of the red pickup these individuals were driving, which matched the license number of O'Connell's pickup. Thus, the information available to Detective Basnaw confirmed that the description of the individuals from the concerned citizen matched the description of O'Connell and Ruggirello.

¶6     Detective Basnaw and RCSO Detective Dave Potter immediately went to the Court

3

Yard Circle Apartments in an unmarked truck. While heading there, they had another conversation with the concerned citizen who had been observing the two men with Bay. This citizen informed Detective Basnaw that he saw Bay put something into a storage area outside of her apartment. Once at the apartments, Detectives Basnaw and Potter began surveillance of Bay's apartment and called for backup. They observed two individuals on the balcony of Bay's second-story apartment who appeared to be watching them. One of these individuals immediately went inside the apartment, and within approximately a minute, O'Connell and another woman left the apartment in O'Connell's red pickup truck. As they passed by the unmarked truck, they appeared to watch Detectives Basnaw and Potter very closely. Detective Potter directed another officer to follow O'Connell, and he was later apprehended.

¶7 While Detectives Basnaw and Potter continued to observe Bay's apartment, Detective Basnaw received a call from Agent Heaney in Butte. Agent Heaney informed Basnaw that Ruggirello had just called one of Heaney's confidential informants in Butte and told him that police officers were watching him and asked the informant to come down from Butte and help Ruggirello get rid of the drugs.

¶8 The detectives soon saw Bay emerge from the apartment with her 18 month-old daughter. She walked over to her minivan, retrieved a bag, and returned to her apartment, all the while watching Detectives Basnaw and Potter. The two detectives then discussed whether they should have detained Bay prior to her re-entry into her apartment with her daughter, in the event they would have to conduct a forcible entry of the apartment. During this time, Detective Basnaw placed a call to the Ravalli County Attorney and discussed the

4

issue of Bay's daughter's safety in the event of a forcible entry of the apartment, and the possibility that Ruggirello could destroy evidence of illegal drugs before a valid search warrant could be obtained. As Detective Basnaw later testified, it was estimated that the procurement of a valid search warrant would have taken between four and seven hours.

¶9 When Bay came out a second time with her daughter, the detectives detained her along with another male neighbor. Detective Basnaw testified that he had been watching Bay's apartment in the unmarked truck for approximately ten to twenty minutes before he detained Bay. Shortly thereafter, additional law enforcement officers arrived on the scene. According to Detective Basnaw, it took approximately fifteen minutes for backup to arrive from the time he initially called for them. After backup arrived, three law enforcement officers went up to Bay's apartment, knocked on the door, and identified themselves. After approximately thirty seconds had passed and they had received no response, the officers kicked in the door of the apartment and entered.

¶10 Upon entering, officers found Ruggirello and another woman in the apartment. Ruggirello was handcuffed, patted down and searched, and officers found approximately $1,500 in his wallet. Detective Basnaw observed that Ruggirello's pupils were pinpointed and that he was sweating. Based on his experience and training as a police officer, Detective Basnaw surmised that Ruggirello was under the influence of methamphetamines.

¶11 Ruggirello was subsequently taken to the Ravalli County Detention Center for booking. Officers then taped off the apartment, and left an officer to guard it while they applied for a warrant to search Bay's apartment. Upon obtaining a valid search warrant and conducting a search of the apartment, officers found approximately three and a half grams of

5

methamphetamine packaged for sale in half gram and one gram packets. The subsequent search of the red Nissan pickup pursuant to O'Connell's arrest turned up approximately seven grams of methamphetamine.

¶12 Ruggirello was subsequently charged by Information with felony Conspiracy to Commit Criminal Distribution of Dangerous Drugs under § 45-4-102, MCA; felony Criminal Possession with Intent to Distribute under § 45-9-103, MCA; felony Criminal Endangerment under § 45-5-207, MCA; and misdemeanor Criminal Possession of Drug Paraphernalia under § 45-10-103, MCA. Ruggirello plead not guilty to all charges. Subsequently, he filed a motion to suppress, arguing that probable cause and exigent circumstances justifying the warrantless entry of Bay's apartment did not exist, and that the search violated his right to be free from unreasonable searches and seizures under the Fourth Amendment to the U.S. Constitution, and Article II, Section 11 of the Montana Constitution. Ruggirello asked the District Court to suppress any evidence obtained as a result of the forcible entry and warrantless search of Bay's apartment, as well as any evidence and statements[1] obtained from Ruggirello and other individuals in the apartment which were later used in the application for the search warrant.

¶13 The District Court held a hearing on Ruggirello's motion, and ultimately denied it. The District Court concluded that exigent circumstances and probable cause existed to justify the forcible entry and initial warrantless search of Bay's apartment. After this ruling, Ruggirello withdrew his not guilty pleas, and plead guilty to one count of Criminal

---

[1] Ruggirello also argued before the District Court that officers violated his *Miranda* rights in the course of his arrest. Ruggirello has not appealed the denial of his *Miranda*-related arguments

6

Possession with Intent to Distribute under § 45-9-103, MCA. Ruggirello was sentenced to fifteen years with the Department of Corrections, with ten years suspended. Ruggirello now timely appeals the denial of his motion to suppress by the District Court.

## ISSUE

¶14 We state the sole issue on appeal as follows: Did the District Court err in concluding that exigent circumstances justified the forcible entry of Bay's apartment, thus denying Ruggirello's motion to suppress?

## STANDARD OF REVIEW

¶15 "We review a district court's ruling on a criminal defendant's motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether the court correctly applied those findings as a matter of law. A court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed." *State v. Vaughn*, 2007 MT 164, ¶ 15, 338 Mont. 97, ¶ 15, 164 P.3d 873, ¶ 15 (quotation and citations omitted).

## DISCUSSION

¶16 Did the District Court err in concluding that exigent circumstances justified the forcible entry of Bay's apartment, thus denying Ruggirello's motion to suppress?

¶17 The Fourth Amendment to the U.S. Constitution and Article II, Section 11 of the Montana Constitution both protect citizens against unreasonable searches and seizures, and require warrants issued upon probable cause prior to a search by law enforcement officials.

to this Court.

7

Warrantless searches are considered *per se* unreasonable unless an exception to the warrant requirement applies. *State v. Case*, 2007 MT 161, ¶ 19, 338 Mont. 87, ¶ 19, 162 P.3d 849, ¶ 19. An exception justifying a warrantless search is the existence of exigent circumstances and probable cause. *State v. Stone*, 2004 MT 151, ¶ 18, 321 Mont. 489, ¶ 18, 92 P.3d 1178, ¶ 18. In *Stone,* we described the circumstances under which exigent circumstances and probable cause permit a warrantless search:

> Exigent circumstances exist if the situation at hand would cause a reasonable person to believe that prompt action is necessary to prevent physical harm to an officer or other person, the destruction of relevant evidence, the escape of a suspect, or some other consequence improperly frustrating law enforcement efforts. Probable cause exists if the facts and circumstances within the officer's personal knowledge, or imparted to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense.

*Stone*, ¶ 18 (citations and quotation omitted).

¶18    "The State bears the heavy burden of showing the existence of exigent circumstances and can meet that burden only by demonstrating specific and articulable facts." *State v. Logan*, 2002 MT 206, ¶ 17, 311 Mont. 239, ¶ 17, 53 P.3d 1285, ¶ 17 (quotation omitted).

¶19    The District Court found the State met its heavy burden in this case and proved the existence of both probable cause and exigent circumstances justifying the initial warrantless search of Bay's apartment. The District Court found that testimony from the suppression hearing clearly established the following:  (1) that O'Connell and Ruggirello were identified as being at Bay's apartment; (2) that Ruggirello knew officers were outside of his apartment; (3) that Ruggirello had called a third party to come and help him get rid of the drugs; and (4) that the amount of methamphetamine Ruggirello was alleged to be in possession of—one

8

half-pound—could have been destroyed by flushing it down the toilet well before Detective Basnaw could obtain a valid search warrant. These facts, combined with other information provided by confidential informants, showed that officers had probable cause to believe O'Connell and Ruggirello were in possession of illegal drugs. They also provided specific and articulable facts reasonably indicating exigent circumstances, insofar as the half-pound of methamphetamine Ruggirello allegedly possessed was in danger of being destroyed. In reaching this conclusion, the District Court distinguished the facts of this case from situations where exigent circumstances were found not to exist, including *Logan*, *State v. Anyan*, 2004 MT 395, 325 Mont. 245, 104 P.3d 511, *United States v. George*, 883 F.2d 1407 (9th Cir. 1989), and *United States v. Tavares*, 223 F.3d 911 (8th Cir. 2000).

¶20    On appeal, Ruggirello does not challenge the existence of probable cause, but instead argues only that the District Court erred in concluding exigent circumstances were present which justified the initial warrantless entry into Bay's apartment. Ruggirello asserts that "Basnaw had no specific facts leading him to believe that individuals in the apartment where Ruggirello was located were in the process of destroying or concealing the half-pound bag of methamphetamine supposedly in the apartment." Ruggirello acknowledges that the information available to Detective Basnaw could lead him to reasonably infer that Ruggirello had drugs in the apartment, but contends Detective Basnaw did not have any information indicating an imminent need for a warrantless search. Ruggirello asserts that "[c]alling someone who is over 120 miles away to come to the apartment to take control of the drugs is far from an imminent threat that the drugs will be destroyed." While Detective Basnaw may have believed it was possible that Ruggirello would destroy the drugs, Ruggirello argues that

he did not have a reasonable belief that the destruction of drug evidence was imminent. Ruggirello maintains this case is analogous to *State v. McBride*, 1999 MT 127, 294 Mont. 461, 982 P.2d 453, and that Detective Basnaw had ample time to obtain a search warrant; thus, no exigent circumstances were present.

¶21 The State urges us to affirm the District Court. The State maintains that Detective Basnaw had "a reasonable belief that Ruggirello would destroy, conceal, or remove the drugs before Basnaw could reasonably obtain a search warrant." The State asserts that Detective Basnaw did not need to be certain that Ruggirello was destroying or concealing illegal drugs, but need only have a reasonable belief that prompt action was necessary to prevent the destruction of relevant evidence. The State maintains that *Stone* supports this assertion. Additionally, the State asserts that the District Court properly distinguished *Logan*, *Anyan*, and *George*, and that its order denying the motion to suppress should be affirmed.

¶22 We agree with the State and affirm the District Court. In the first instance, the State is correct to note that an officer does not need to be certain that evidence is being destroyed in order for exigent circumstances to exist. "Exigent circumstances exist if the situation at hand would cause a reasonable person to believe that prompt action is necessary to prevent . . . the destruction of relevant evidence . . . or some other consequence improperly frustrating law enforcement efforts." *Stone*, ¶ 18. Here, Detective Basnaw had specific and articulable facts which would lead a reasonable person to believe that prompt action was necessary to prevent the destruction of the half-pound of methamphetamine Ruggirello allegedly possessed. Based on information from confidential informants, Detective Basnaw knew that Ruggirello was coming to Montana with methamphetamine, that Ruggirello was aware that police

10

officers were watching him, and that he had asked a third party to help him get rid of the drugs. Detective Basnaw was also given information that the amount of the methamphetamine was one half-pound, and knew that such an amount could be flushed down the toilet in a short period of time. Moreover, Basnaw had witnessed O'Connell and another occupant of the apartment already leave the scene, and their behavior indicated they were aware that police were watching them.

¶23 These facts, taken together, would lead a reasonable person in Detective Basnaw's position "to believe that prompt action [was] necessary" to prevent Ruggirello from destroying the methamphetamine he allegedly possessed. *Stone*, ¶ 18. The fact that officers never recovered a full half-pound of methamphetamine, or never witnessed Ruggirello actually destroying drugs, does not alter our conclusion that Basnaw reasonably believed exigent circumstances existed. The question is not whether Basnaw was *certain* that Ruggirello had a half-pound of methamphetamine and that he was destroying it, but rather whether it was reasonable under the circumstances for Detective Basnaw to believe that Ruggirello had illegal drugs and that prompt action was necessary to prevent him from destroying them. Ruggirello does not challenge on appeal the reliability of the information provided by the confidential informants; therefore, it was indisputably proper for Detective Basnaw to take account of this information in formulating his belief that prompt action was necessary and that exigent circumstances existed.

¶24 Additionally, the District Court correctly distinguished the facts of this case from *Logan*, *Anyan*, *George*, and *Tavares*. In *Logan,* we found no exigent circumstances justified a warrantless search pursuant to a traffic stop, because the officer in that case actually

11

testified that nothing prevented him from obtaining a search warrant prior to conducting a search of the vehicle. *Logan*, ¶¶ 19-20. Here, on the contrary, Detective Basnaw's testimony indicated that Ruggirello was aware of his presence, had indicated to a confidential informant that he needed to get rid of the drugs, and could have done so in a relatively short time. Similarly, the District Court properly distinguished *Anyan* and *Tavares* where exigent circumstances justifying a no-knock entry did not exist, because officers in those cases could not have reasonably believed that evidence of illegal drugs could be quickly destroyed. *Anyan*, ¶¶ 60, 62 (meth lab could not be destroyed in a matter of five to ten seconds, thus officers had to comply with knock and announce rule); *Tavares*, 223 F.3d at 916-17 (no exigent circumstances were present justifying a no-knock entry because five pounds of methamphetamine could not be destroyed quickly). Additionally, the District Court correctly distinguished *George* because the record in that case gave no indication that the officers reasonably believed the suspects were aware of their presence, or of their imminent capture by law enforcement officials; thus, no exigent circumstances existed justifying a warrantless arrest of the suspect in his apartment. *George*, 883 F.2d at 1413-15. Here, to the contrary, "officers watching Bay's apartment knew that the suspects inside were aware of police presence outside and concerned about being apprehended with illegal drugs."

¶25 Furthermore, we agree with the State that Detective Basnaw did not have adequate time to secure a search warrant. In *McBride*, we found that no exigent circumstances justifying a warrantless search of a house were present, because officers had time to secure a search warrant and there was no indication that anyone inside the house was in danger or about to flee. *McBride*, ¶¶ 16-18. Here, however, Detective Basnaw had already witnessed

12

O'Connell flee the scene, knew that Ruggirello was aware of his presence, and knew that he had contacted a third party to help him get rid of the drugs. This, combined with the fact that the procurement of a search warrant would take from four to seven hours, reasonably indicated the presence of exigent circumstances.

## CONCLUSION

¶26 For these reasons, we affirm the denial of Ruggirello's motion to suppress by the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS