No. 80-315

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JOHN STEMPLE, JR.,

Defendant and Appellant.

Appeal from: District Court of the First Judicial District,
In and for the County of Lewis and Clark
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Petaja and Smoyer, Helena, Montana
Charles Petaja argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Charles Graveley argued, County Attorney, Helena, Montana

Submitted: October 28, 1981

Decided:

Filed: JUN 21 1982

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

John Stemple, Jr. (defendant) appeals a conviction in Lewis and Clark County District Court, of possession of dangerous drugs with intent to sell, a felony.

Defendant raises several issues. He raises two search and seizure issues relating to the stop and search of his vehicle. He contends that the police did not have probable cause to stop his vehicle, and he contends that his consent to search his pickup was not voluntarily given. He also contends that certain evidence introduced at trial was fruit of the poisonous tree (that is, the illegal stop or the illegal search) and therefore was illegally admitted in evidence. He also contends that his conviction is unsupported by substantial evidence, this contention being based on the fact that defendant was not caught with the marijuana in his actual possession. Finally, he contends that admission of evidence seized as the result of another search was prejudicial and that he is entitled to a new trial. We affirm on all issues except the last. We hold that the evidence was admitted in flagrant violation of the standards we set forth in State v. Just (1979), ___ Mont. ___, 602 P.2d 957, 36 St.Rep. 1535, and further, that the manner in which this evidence was used against defendant denied him a fair trial.

In late December 1979, Detectives McCormick and Hammerbacker, of the Lewis and Clark County Sheriff's Department received information that there was some drug-related activity at a residence located at 1014 Elm Street in Helena. Upon surveillance of the residence, the detectives noticed an unusual amount of traffic coming and going from the residence and an out of state vehicle parked in front of the house.

On the morning of January 11, 1980, detectives McCormick and Hammerbacker stated that they observed a man they believed to be coming out of the residence placing a partially-filled green garbage bag into the tool compartment of a two-tone Dodge pickup truck parked near the house. This man was later identified as the defendant. After placing the bag in the tool compartment, the defendant then returned to the house at 1014 Elm. A short time later, the defendant appeared at the door of the house and looked in the direction of the detectives' unmarked car and then disappeared back inside the house. Shortly before noon, the defendant came out of the house and entered the truck, driving off at a normal speed. The detectives followed. At this point, the defendant's vehicle accelerated and made several rapid and evasive turns. The detectives temporarily lost sight of the vehicle and radioed other units in the area to stop the defendant's truck. Almost immediately after the radio report for more help, the truck was stopped by deputy John Risken. The detectives arrived on the scene only seconds after the defendant was stopped. The total time that had elapsed between when they had first lost sight of the vehicle and when they arrived at where it was eventually stopped was from 30 to 90 seconds.

Detective Hammerbacker informed the defendant that he was suspected of having a large amount of marijuana in the tool compartment, and asked permission to search the vehicle. The defendant consented, and told the officers that if any marijuana was found he would smoke it all. The officers then opened the tool compartment, but failed to find the green garbage bag, or any other evidence of marijuana. After releasing the defendant, the officers searched the short

-3-

distance that the defendant had travelled after eluding the detectives. Almost immediately a green garbage bag was found nearby which contained about ten pounds of marijuana. The detectives then obtained a warrant for the defendant's arrest, and also a search warrant for 1014 Elm and the out-of-state car parked in front of the house. The search of the house and car at 1014 Elm revealed a large amount of marijuana and assorted paraphernalia. The defendant, upon learning of the warrant for his arrest, contacted his lawyer who accompanied him to the courthouse, where he was arrested.

## THE STOP OF DEFENDANT'S VEHICLE

In State v. Gopher (1981), ___ Mont. ___, 631 P.2d 293, 38 St.Rep. 1078, this Court set forth the standards by which we judge vehicular stops. In Gopher, we stated:

> ". . . The State's burden has two elements: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. . ." 631 P.2d at 296, 38 St.Rep. at 1081.

The defendant's behavior clearly justified the stop. He placed a green bag in the back of his pickup. In driving away from the residence at 1014 Elm, he made several sharp turns in rapid succession at a relatively high speed on icy or snow-packed roads. He failed to use proper turn signals, and failed to pull over after the officers had activated their flashing light on top of their car. This dangerous and evasive driving, combined with the surveillance observations, provided a sufficient objective basis to give the officers a reasonable suspicion that the defendant was engaged in wrongdoing.

## THE SEARCH OF DEFENDANT'S VEHICLE

The defendant contends his consent to search his truck was involuntary because the officers failed to inform him of

-4-

his right to refuse consent and therefore he could not intelligently give his consent. The United States Supreme Court has expressly rejected such an argument in Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, and we see no reason to impose a stricter standard under our own constitution. The voluntariness of consent is a question of fact, to be determined from the totality of the circumstances. The defendant's knowledge of his right to refuse the search is not controlling, but it is a factor to be taken into account. Bustamonte, supra.

The defendant also contends that the presence of five police officers was so inordinately coercive that the defendant's consent was not truly voluntary. The defendant's offer to smoke any marijuana found in his vehicle belies his claim that he was intimidated by the presence of the officers because he opened the tool box to facilitate the search. Not a scrap of evidence suggests that defendant's consent was coerced. The totality of the circumstance clearly establishes the defendant's voluntary consent to the search of his vehicle.

PROBABLE CAUSE FOR ARREST--FRUIT OF THE POISONOUS TREE

The argument that the arrest was without probable cause, and the argument that the bag found nearby was fruit of the poisonous tree, must, of course, be based on a holding that the stop and search was illegal. Defendant's argument fails because of our holding that the stop and search was legal.

SUBSTANTIAL EVIDENCE

Defendant's contention that his conviction was unsupported by substantial evidence is grounded primarily on the fact that no direct evidence was presented to show that the defendant had actual physical possession of the marijuana. This contention is without merit.

The officers saw defendant place a green garbage bag in the tool compartment of his truck. Defendant eluded the officers, momentarily. The officers stopped defendant's truck and defendant consented to a search of his truck. The search revealed the green garbage bag was no longer in the tool compartment. The officer retraced the route of the defendant's vehicle and the officers discovered a bag similar to the one seen in the defendant's possession. It contained marijuana. It was clear that the bag had been recently thrown there because a recent snowfall had not covered it up, nor were there any footprints near the bag.

Defendant seems to argue that a conviction cannot be upheld unless the defendant has physical possession of the contraband at the time of his arrest. But "[e]xclusive, immediate personal possession is not essential to establish constructive possession." State v. Trowbridge (1971), 157 Mont. 527, 487 P.2d 530, 532. The facts were sufficient to sustain the verdict.

FAILURE TO COMPLY WITH STATE V. JUST

The search of 1014 Elm and the car parked in front resulted in the seizure of a large amount of marijuana, scales for weighing it, and bags for packaging it. This search also resulted in the arrest of the occupant of the house, Michael Isom. The search and arrest were later found to be illegal. See, State v. Isom (1982), ___ Mont. ___, 641 P.2d 417, 39 St.Rep. 137.

Throughout the defendant's trial, testimony, exhibits and other evidence were permitted, over defendant's repeated objection concerning the search of 1014 Elm. Seven large garbage bags full of marijuana seized at 1014 Elm were present in the courtroom, although never introduced in

evidence. Photographs of various paraphernalia, including a scale and screen seized at 1014 Elm were admitted in evidence. The testimony of the officers is replete with references to the search at 1014 Elm and the arrest of Michael Isom. Of the 44 exhibits entered into evidence, 31 of them had been seized in the search of the house at 1014 Elm and the car parked in front.

The State's position at trial was that the evidence from 1014 Elm was relevant to show a common scheme or plan. Notwithstanding this contention, the State made absolutely no effort to comply with the test we set forth in State v. Just, supra, before evidence of other crimes or evidence of a common scheme or plan can be introduced. We stated in Just that a failure to comply with these standards would require reversal. 602 P.2d at 961. Furthermore, the prosecutor, in arguing for the admission of this evidence, repeatedly promised the court that he would offer a cautionary instruction relating to this evidence. This promise was not kept. Assuming the evidence to be otherwise admissible, we must reverse the conviction because of the failure to comply with the Just standards.

But neither are we convinced that the evidence was admissible in the manner it was used. Rule 403, Mont.R.Evid., prohibits the introduction of evidence where its probative value is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." The defendant was charged with possession of ten pounds of marijuana with intent to sell. But the jury viewed evidence of 80 to 90 pounds of marijuana seized in the search of the house at 1014 Elm. The defendant did not reside there, nor did he have any connection to the car

parked in front. Although the State should be permitted to show a connection between the marijuana traced to the defendant and the marijuana found in the search of 1014 Elm, the amount of evidence used to demonstrate this connection, and the manner in which it was used, was highly prejudicial to the defendant. But the connection between the marijuana found at the house and that traced to the defendant is obviously a circumstantial factor for the jury to consider in determining whether defendant placed marijuana in his pickup truck when he came out of the house at 1014 Elm. If the marijuana was packaged similarly, there is indeed the greater likelihood that it was marijuana that the defendant placed in the back of his pickup. The State could, however, prove this connection without using the tactics employed in this case.

The judgment is vacated and the cause remanded for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-8-