No. 04-564

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 154

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

SCOTT L. WETZEL,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Fifth Judicial District,
In and for the County of Jefferson, Cause No. DC 2003-1876
The Honorable Loren Tucker, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

       Steven J. Shapiro, Attorney at Law, Montana City, Montana

       For Respondent:

       Honorable Mike McGrath, Montana Attorney General, John Paulson, Assistant Attorney General, Helena, Montana; Mathew J. Johnson, Jefferson County Attorney, Boulder, Montana


Submitted on Briefs:  March 16, 2005

Decided:  June 15, 2005

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Scott L. Wetzel (Wetzel) was charged with, and ultimately pled guilty to, felony criminal possession of dangerous drugs. He appeals the Fifth Judicial District Court's denial of his Motion to Suppress. We affirm.

**ISSUE**

¶2     Did the District Court err in denying Wetzel's Motion to Suppress?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     At approximately 10:30 p.m. on March 12, 2003, officers responded to an attempted shoplifting call from the Montana City Store. The suspects, later identified as Maria and Scott Wetzel, had left the store by the time the officers arrived, but had driven across the street and entered the Jackson Creek Saloon. As the officers entered the Saloon, they recognized Maria--based upon the store clerk's detailed description--just as she was entering the women's bathroom. They also noticed Wetzel, again from the clerk's description, standing near the gaming machines. Responding officer Deputy Grimsrud directed a female Saloon employee to ask Maria to come out of the bathroom. The employee entered the bathroom and returned, reporting that Maria said she would be out shortly. The employee also advised that Maria was putting some things in the water tank of a toilet. Grimsrud entered the bathroom, detained Maria, checked the toilet tank, and seized two spoons from the tank and one liquid-filled syringe from the floor. Subsequent testing established that the liquid in the syringe was methamphetamine.

¶4     Grimsrud escorted Maria out of the Saloon where Officer Rogstad had detained

2

Wetzel. The officers conducted weapons searches of both Wetzel and Maria and found no weapons. Both Wetzel and Maria were handcuffed. Maria then gave the officers consent to search her vehicle. Among other incriminating items, the officers found three more spoons and another syringe. Deputy Grimsrud determined that Maria was on probation and following a telephone conversation with Maria's probation officer, Grimsrud arrested her for the probation violation of being in a bar and for possible possession of dangerous drugs and drug paraphernalia. Maria was placed in the back seat of the officer's patrol car. After determining that Wetzel was not on probation, his handcuffs were removed and he was told that he could leave.

¶5     It is at this point that Wetzel's report of the events differs from Grimsrud's. Wetzel maintained that after he was told he could leave, the officers said they needed to search him one more time, and that it was during this search that Officer Rogstad found an unlabeled brown plastic pharmacy pill bottle in Wetzel's coat pocket. The bottle contained several pills that were visible through the bottle. When asked what the pills were, Wetzel testified that he did not answer because he did not know what they were.

¶6     Grimsrud, on the other hand, testified that after Wetzel was told he could leave, he asked to get into the backseat of the patrol car with his wife before he left. Wetzel had been speaking to his wife through the open back door of the patrol car. Grimsrud stated that he did not want to deprive the couple of the opportunity to speak privately, but determined that he first needed to conduct a contraband search of Wetzel, which had not been done at the time Wetzel was searched for weapons. The deputy asked for Wetzel's consent to another

3

search, explaining that he would be looking for contraband, specifically drugs, that Wetzel could possibly pass to his wife while in the car. According to Grimsrud, Wetzel agreed to the search.

¶7 It is undisputed that Grimsrud did not tell Wetzel he had the right to refuse the search. Grimsrud maintained, however, that Wetzel understood that the only consequence of refusing the search was that Wetzel would not be allowed in the patrol car with his wife. After Rogstad discovered the pill bottle in Wetzel's pocket, Grimsrud claims that Wetzel told the officers the pills were Benadryl. Grimsrud, who has suffered from allegeries for many years, could tell by looking at the pills that they were not Benadryl.

¶8 Both Wetzel and Grimsrud testified that Grimsrud then seized the pills and told Wetzel he was free to go. The officers then left with Maria en route to the Sheriff's Office. After arriving at the Sheriff's Office, Grimsrud called the St. Peter's Hospital pharmacist. The deputy removed the pills from the pill bottle and read the imprinted numbers and letters to the pharmacist. The pharmacist identified the pills as dextroamphetamine, a highly controlled drug.

¶9 Wetzel was subsequently arrested and charged with criminal possession of dangerous drugs. On November 4, 2003, Wetzel filed a Motion to Suppress Evidence seeking suppression of the pill bottle and its contents. The District Court conducted a hearing on Wetzel's Motion and after considering the conflicting testimony, ultimately ruled from the bench at the end of the hearing. The court denied the Motion on the grounds that Wetzel had consented to the search and that it was objectively reasonable under the circumstances for

4

the officers to search the closed container. It is from the District Court's denial of his Motion to Suppress Evidence that Wetzel appeals.

## STANDARD OF REVIEW

¶10 The standard of review of a district court's denial of a motion to suppress evidence is whether the court's findings are clearly erroneous. To determine whether a finding of fact is clearly erroneous, this Court ascertains whether the finding is supported by substantial evidence, whether the district court misapprehended the effect of the evidence, and whether the Court is nevertheless left with a definite and firm conviction that the district court made a mistake. We further review a district court's denial of a motion to suppress to determine whether the court's interpretation and application of the law are correct. This Court's review is plenary as to whether the district court correctly interpreted and applied the law. *State v. Martinez*, 2003 MT 65, ¶ 19, 314 Mont. 434, ¶ 19, 67 P.3d 207, ¶ 19 (internal citations omitted).

¶11 It is not this Court's function, on appeal, to reweigh conflicting evidence or substitute our evaluation of the evidence for that of the district court. *In re A.F.*, 2003 MT 254, ¶ 24, 317 Mont. 367, ¶ 24, 77 P.3d 266, ¶ 24 (citations omitted). In cases in which the district court must resolve conflicting testimony, if substantial evidence supports the district court's factual findings, then such findings are not clearly erroneous. *Bonnie M. Combs-Demaio Liv. Trust v. Colony*, 2005 MT 71, ¶ 16, 326 Mont. 334, ¶ 16, 109 P.3d 252, ¶ 16. We defer to the district court in cases in which conflicting testimony is presented because we recognize that the court had the benefit of observing the demeanor of witnesses and rendering a

5

determination of the credibility of those witnesses. *In re Marriage of Peetz* (1992), 252 Mont. 448, 454, 830 P.2d 543, 547.

## DISCUSSION

¶12 Did the District Court err in denying Wetzel's Motion to Suppress?

¶13 Wetzel claims on appeal that the officers committed a series of errors on the evening of March 12, 2003, and that these errors led to the discovery of the controlled substance. To the extent that Wetzel failed to present arguments regarding some of these alleged errors to the District Court, we decline to address them. It is well-established that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory. *Bekkedahl v. McKittrick*, 2002 MT 250, ¶ 31, 312 Mont. 156, ¶ 31, 58 P.3d 175, ¶ 31 (citing *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15; *Day v. Payne* (1996), 280 Mont. 273, 276, 929 P.2d 864, 866). We therefore review only the issues presented to and ruled upon by the District Court--did the police legally search Wetzel and seize the pill bottle, and did the police then lawfully identify the bottle's contents?

¶14 Wetzel argues that even *if* Grimsrud asked for consent to search him--a contention he disputes--Grimsrud failed to "express the consequences of failure to consent," and, as a result, *if* consent was given, it was coerced and invalid. Wetzel also argues that because the pills were not obvious contraband (Grimsrud did not know what they were by merely looking at them), Grimsrud had no right to seize the pill bottle or to subsequently open it and have its contents identified without first obtaining a warrant.

6

¶15     The State counters that while the deputy did not "express the consequences of failure to consent," Wetzel clearly understood that the only consequence of his refusal to consent to the search was that he would not be allowed in the patrol car with his wife. Additionally, the State points out that whether a defendant is told the consequences of failure to consent to a search is only one factor that courts consider when determining whether a defendant's consent is voluntarily given and is not definitive of whether consent is voluntary. The State further asserts that after Wetzel gave consent to be searched and Rogstad discovered the pill bottle, Wetzel did not revoke his consent. Therefore, it was reasonable for Grimsrud to seize the bottle, open it and identify its contents.

¶16     In *State v. Rushton* (1994), 264 Mont. 248, 257-58, 870 P.2d 1355, 1361, we explained:

> Under the Fourth and Fourteenth Amendments to the United States Constitution, and Article II, Section 11, of the Montana Constitution, warrantless searches and seizures . . . are *per se* unreasonable subject only to a few carefully drawn exceptions. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; *State v. Kim* (1989), 239 Mont. 189, 779 P.2d 512. One of the recognized exceptions to the warrant requirement arises when a citizen has knowledgeably and voluntarily consented to a search. *Schneckloth*, 412 U.S. at 219, 93 S.Ct. at 2043; § 46-5-101, MCA.
>
> . . .
>
> The *Schneckloth* Court made clear that the Constitution requires that consent be voluntarily given, uncontaminated by any duress or coercion, express or implied. In order to determine whether consent to a search was given voluntarily, this Court has adopted the same test used by the Supreme Court, which is the "totality of the circumstances" test. *Kim*, 239 Mont. at 196, 779 P.2d at 517.

¶17    In determining whether consent was voluntarily given under specific circumstances, this Court has considered various factors including whether the defendant was under arrest at the time consent was requested (*State v. Yoss* (1965), 146 Mont. 508, 409 P.2d 452); whether consent was sought *after* the search had already been conducted (*State v. Olson*, 2002 MT 211, ¶ 22, 311 Mont. 270, ¶ 22, 55 P.3d 935, ¶ 22); whether the defendant had been expressly informed that he or she had the right to refuse to be searched (*Olson*, ¶ 21); and whether the defendant was threatened or coerced in any manner (*Rushton*, 264 Mont. at 259, 870 P.2d at 1362--defendants were told that they would be held in custody in their home "for a number of hours" if they did not consent to a warrantless search).

¶18    The District Court analyzed the "totality of the circumstances" surrounding Wetzel's consent.  In its ruling, the District Court accepted as true Deputy Grimsrud's testimony that Wetzel had asked to sit in the back seat of the patrol car with his wife.  The court also found that after making such a request, the deputy informed Wetzel he had to submit to a "contraband" search.  The District Court noted that before asking to join his wife in the officer's car, Wetzel's handcuffs had been removed and he was told he was free to go.  Additionally, the court found that, after asking for permission to enter the car, Wetzel was free to refuse consent to another search and was still free to go.  Wetzel was neither under arrest nor was he threatened with arrest at the time Grimsrud asked for consent to search him.  The court also noted that Wetzel had been speaking to his wife through the open door of the patrol car and could have continued to do so without undergoing another search.  Lastly, the District Court found that after consenting to the search, Wetzel did not revoke his consent

8

once the pill bottle was discovered; therefore, it was reasonable for Grimsrud to open the pill container and identify the pills within.

¶19 In *State v. Stemple* (1982), 198 Mont. 409, 412-13, 646 P.2d 539, 541, Stemple--like Wetzel here--argued that his consent to search his truck was involuntarily given because the officers failed to inform him of his right to refuse consent and therefore he could not intelligently give consent. We noted that the U.S. Supreme Court had expressly rejected this argument in *Schneckloth*, by holding that a subject's knowledge of a right to refuse is only one of the factors to be taken into account and is not determinative of the questions of voluntariness. We have since applied this analysis and rule in *Rushton*, 264 Mont. at 258, 870 P.2d at 1361, and *Olson*, ¶ 21.

¶20 We conclude that the District Court's findings are amply supported by Grimsrud's testimony and are not clearly erroneous. Additionally, the court's legal conclusion that given the facts presented here, Wetzel's consent was given voluntarily and knowingly, despite his not having been told that he could refuse consent, is a correct interpretation of the law.

¶21 We further conclude that Grimsrud was legally authorized by virtue of Wetzel's consent to open the container and identify its contents. In *State v. Parker*, 1998 MT 6, 287 Mont. 151, 953 P.2d 692, we affirmed the district court's denial of Parker's motion to suppress evidence obtained during a vehicle search on the ground that the vehicle owner consented to the search. Parker was a passenger in a friend's car that was stopped after an officer observed suspicious behavior by some of the occupants of the car. The owner of the car gave the officer permission to search the car and during the search the officer opened a

9

closed fanny pack containing drugs and paraphernalia. It was later determined that the fanny pack belonged to Parker, who was charged with felony possession of dangerous drugs. Parker challenged the introduction of the contents of the fanny pack, arguing that he had not given consent to search the fanny pack. We concluded that the officer could have reasonably believed that the consent to search the vehicle extended to items inside the vehicle. In support, we cited *Florida v. Jimeno* (1991), 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297, in which the U.S. Supreme Court found that it is not necessary for police who wish to search closed containers in a car to request permission to search each container in the car. We explained "that the basic test of objective reasonableness controls and if an individual's consent could reasonably be understood to extend to a particular container, a more explicit authorization is not required." *Parker*, ¶ 21, citing *Jimeno*, 500 U.S. at 252, 111 S.Ct. at 1804.

¶22 Based upon the foregoing, the District Court did not err in concluding that Grimsrud was authorized to open the pill bottle and identify the pills within, by virtue of Wetzel's unrevoked voluntary and knowing consent. As we stated in *Parker*, "[c]onsent which is given knowingly and voluntarily by an individual with the ability to consent is a recognized exception to the warrant requirement." *Parker*, ¶ 20 (citation omitted).

¶23 Finally, we decline to parse Wetzel's consent, as the Dissent urges. Wetzel, who presumably knew what he was carrying, acquiesced in what was identified for him as a contraband search, and did not in any way qualify his consent. It is illogical to fault the police for seizing articles which are suspected of being contraband, discovered pursuant to

a consensual contraband search. Moreover, we note that the Dissent does not question the reasonableness of the contraband search or the manner in which it was conducted. Thus, we are not here confronted with--and need not address--the extreme example of an officer seizing innocuous articles of clothing or personal effects, as described in ¶ 7 of the Dissent.

**CONCLUSION**

¶24 We therefore affirm the District Court's denial of Wetzel's Motion to Suppress.

/S/ PATRICIA O. COTTER

We Concur:


/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶25    I dissent.

¶26    The Court has given its stamp of approval to a warrantless seizure without any analysis of the appropriate scope of the seizure. Assuming Officer Grimsrud's version of the facts, Wetzel, after he was told he could leave, asked to get into the backseat of the patrol car to talk with his wife. Grimsrud was amenable to Wetzel getting in the car so long as Wetzel consented to a search to make sure that he did not have contraband that he could pass to his wife. Officer Rogstad conducted the search and seized a pill bottle found in the pocket of Wetzel's jacket. Wetzel claimed the pills were Benadryl. Grimsrud did not believe that they were Benadryl so he took the pills to the sheriff's office, called the hospital pharmacy with the pill numbers, and discovered that they were dextroamphetamine, a highly controlled drug.

¶27    Under Montana law, a search of a person must be by authority of a search warrant or in accordance with judicially-recognized exceptions to the warrant requirement. Section 46-5-101, MCA. Here, the Court relies on Wetzel's consent as the recognized exception to the warrant requirement. I do not quarrel with the conclusion that Wetzel consented to a contraband search. I do quarrel with the scope of the resulting seizure of the pills. A warrantless seizure, no less than a seizure with a warrant, must be "reasonable." Article II, Section 11, Montana Constitution. Officer Grimsrud testified that it was necessary for him to preserve the integrity of the patrol car–that he could not allow one subject to transfer contraband to another person who is in custody in the car. Accordingly, they "asked

13

[Wetzel] for consent to search him for any contraband before he went in the backseat of that car. And it was explained to him why we were doing that." It was reasonable for the officers to search Wetzel before allowing him into to the patrol car. Furthermore, the explanation given to Wetzel (i.e., the need to protect the integrity of the patrol car) defined the scope of Wetzel's consent to any search or seizure.

¶28 "When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure based on less than probable cause." *United States v. Place* (1983), 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110, 118. In this case, neither was the nature and extent of the detention minimally intrusive nor did Officer Grimsrud have any specific articulable facts warranting a reasonable belief that the pills were illegal or providing any reasonable basis for seizing them as contraband. *Place*, 462 U.S. at 703, 103 S.Ct. at 2642, 77 L.Ed.2d at 118. In order to assure that Wetzel did not pass anything to his wife, all the officers needed to do was empty his pockets of their contents, allow him to visit with his wife, and return the contents to Wetzel when he exited the car. Once the contents of Wetzel's pockets were in the officers' possession, there was no further danger of transmittal to the wife and thus no justification for any further snooping. At that juncture, since Wetzel could not pass the pill bottle to his wife, and the bottle was not obvious or apparent "contraband," there was no basis for seizing the pill bottle to examine the contents.

¶29 Officer Grimsrud testified as follows:

> Q: So, you didn't know what the pills were in the bottle at the time that you seized them at the parking lot?

14

Q: That is correct.

Q: So, you had to wait until later and talk to a pharmacist?

A: That is correct.

Q: So, you didn't know they were illegal in the parking lot.

A: That is correct.

Q: Why didn't you just give the pill bottles back to Scott and say good-bye?

A: Because he didn't tell us the truth.

¶30 To satisfy the requirement that law enforcement have specific, articulable facts warranting a reasonable belief that the pills were illegal, *Place*, 462 U.S. at 703, 103 S.Ct. at 2642, 77 L.Ed.2d at 118, the Court relies on the fact that Officer Grimsrud, himself a user of allergy medications, did not believe Wetzel's claim that the pills were Benadryl. The Benadryl website indicates that there are no fewer than eight different types of Benadryl, including gel capsules, capsules, "Ultratabs," "Kapsuls," dissolving tablets, and a topical cream. Pfizer, *Benadryl Products for Adults*, *at* http://www.benadrylusa.com/benadryl/.asp?sec=3&page=40&from=44 (last visited June 8, 2005). There is nothing in the record indicating that Officer Grimsrud was so well versed in pharmacy that he could recognize all eight types. Furthermore, even assuming that Grimsrud was in a position to recognize all types of Benadryl, that merely means that he could conclude that the pills *were not* Benadryl. Given that there are tens of thousands of legitimate prescription drugs in numbered pills, determining that the pills are not Benadryl is not the equivalent of positively identifying them as contraband. The Court falls victim to Officer Grimsrud's fallacy of

15

denying the antecedent. The fact that Benadryl is legal, does not imply that pills which are not Benadryl are not legal. *Crouse-Hinds Co. v. InterNorth, Inc*. (2nd Cir. 1980) 634 F.2d 690, 702-03. ("The proposition that 'A implies B' is not the equivalent of 'non-A implies non-B,' and neither proposition follows logically from the other.") (citing J. Cooley, *A Primer of Formal Logic* 7 (1942)). Since Officer Grimsrud concedes that he had no specific and articulable facts warranting a reasonable suspicion of contraband, he could have achieved the governmental interest (integrity of the patrol car) with "minimal intrusion" on Wetzel's Fourth Amendment interests by simply having Wetzel remove his jacket before entering the car or temporarily seizing and holding the contents of his pockets while he was in the car and returning the contents upon his exit. *See Place*, 462 U.S. at 709-10, 462 S.Ct. at 2645-46, 77 L.Ed.2d at 122-23 (holding that a ninety-minute detention of luggage without informing defendant of the place to which they were transporting the luggage, what the length of time he might be dispossessed of it, and what arrangements would be made for return of the luggage if the investigation dispelled the suspicion, was unreasonable).

¶31    In the present case, it was constitutionally reasonable for the officers to search Wetzel, temporarily hold the contents of his pockets while he visited with his wife in the patrol car, and then return the contents, including the unopened and ostensibly legal pill bottle to Wetzel. Given that the officers did not know the pills were illegal, it was entirely *unreasonable* for them to seize and indefinitely hold the pill bottle once Wetzel had exited the car and presented no more risk of transmittal. Under the Court's rationale (unrestricted seizure of property, irrespective of whether it can be passed on to his wife) it would have

been equally permissible (and thus equally appalling) for the officers to seize Wetzel's jacket and wallet and take them to the sheriff's office so that the officers could rip open the lining of the jacket and rummage through the wallet looking for drugs or evidence of contraband. This unwarranted and unjustified "fishing expedition," *FTC v. Am. Tobacco Co.* (1924), 264 U.S. 298, 306, 44 S.Ct. 336, 337, 68 L.Ed. 696, 701, violated Wetzel's rights of privacy and freedom from unreasonable searches and seizures under Article II, Sections 10 and 11 of the Montana Constitution.

¶32 I would reverse the District Court's denial of the motion to suppress the evidence.

/S/ W. WILLIAM LEAPHART