FILED

05/21/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0157

DA 22-0157

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 107N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

IOLA MAERRIEA JOHNSTON,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-20-420
Honorable Robert L. Deschamps III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Joshua James Thornton, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Mardell Ployhar,
Assistant Attorney General, Helena, Montana

            Kirsten H. Pabst, Missoula County Attorney, Matt Jennings, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs: February 14, 2024

Decided: May 21, 2024

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Iola Maerriea Johnston (Johnston) appeals her conviction in the Fourth Judicial District Court, Missoula County, for criminal possession of dangerous drugs and tampering with evidence.

¶3 On August 11, 2020, Johnston was leaving her niece's apartment when she was arrested by Deputy United States Marshals Shane Meinhold (Meinhold) and Chris Strommen (Strommen). At the time, Johnston was under probationary supervision with the Department of Corrections (DOC) and an arrest warrant stemming from prior charges had been issued for her failure to appear. Upon exiting her niece's apartment, Meinhold and Strommen approached Johnston and informed her that she was under arrest. Johnston pulled away from them and threw her purse and cell phone towards her niece's front door. A woman opened the door and attempted to take the purse inside. The Marshals ordered the woman to leave the purse where it was and, when the woman refused, Meinhold had to wrestle the purse away from her. Meinhold ultimately secured both the purse and the phone.

¶4 Johnston's probation officer, Officer Jeremy Lizotte (Lizotte) arrived roughly 30 seconds after Meinhold and Strommen initiated Johnston's arrest. Lizotte began searching

2

Johnston's purse and found a bag containing a crystalized substance. Lizotte told Meinhold it was a large quantity of what appeared to be methamphetamine. Johnston interrupted stating "[i]t's an ounce." At this point, Lizotte turned the purse over to Missoula Police Officer Randy Long (Long). Long—who arrived after the Marshals and Lizotte had initiated Johnston's arrest—read Johnston her rights and questioned her regarding the contents of her purse. Johnston stated the bag was hers and that she had purchased an ounce earlier that morning for $700.00. Long testified the amount was significant—approximating 120 doses—and in his experience it exceeded the amount a person would have in their possession for personal use. Lizotte and Meinhold later searched Johnston's niece's apartment—with her niece's permission—and located a notebook among Johnston's things with a page titled "[p]eople who owe me[,]" followed by a list of names and amounts.

¶5 Following her arrest, Johnston was charged with felony criminal possession of dangerous drugs with the intent to distribute, in violation of § 45-9-103, MCA; felony tampering with or fabricating physical evidence, in violation of § 45-7-207, MCA; and felony unlawful possession of property subject to criminal forfeiture, in violation of § 45-9-206(1), MCA. Johnston was appointed a public defender; however, a few months later her attorney indicated there was a total breakdown in their attorney-client relationship. The court assigned new counsel the following day. Despite being represented by counsel, Johnston filed numerous pro se documents with the court including a handwritten motion to suppress. The court informed Johnston she was currently represented by counsel and so would need to go through her attorney if she wanted to file documents. Specifically, the

3

court informed Johnston and her counsel that it would only consider the motion to suppress if submitted by Johnston's attorney. Johnston's attorney never filed a motion to suppress. On July 26, 2021, Johnston's second attorney moved the court to vacate the bench trial set for July 28, 2021, citing an irretrievable breakdown in their attorney-client relationship, which needed to be addressed prior to trial.

¶6 Johnston asked to represent herself at a status conference held on August 5, 2021. The District Court granted Johnston's request provided that standby counsel be present to assist her. The court then told the State it would need to respond to Johnston's motion to suppress filed on July 28, 2021. In her motion to suppress, Johnston argued the search of her purse was illegal because the arrest relied on information from a confidential informant that she had assault rifles in her possession and the Marshals failed to contact her probation officer or have a probation officer present when Johnston's purse was searched. The State argued the search was lawful as both Meinhold and Lizotte stated in their reports that Lizotte searched Johnston's purse pursuant to his authority as a probation officer. The District Court denied Johnston's motion noting, first, that the confidential informant issue was irrelevant as the case did not involve firearm charges. Second, the court concluded the search of her purse was a valid probationary search as both Meinhold and Lizotte reported that Lizotte conducted the search of her purse pursuant to his authority as a probation officer.

¶7 During trial, Johnston again argued that her purse was illegally searched by Meinhold prior to Lizotte arriving at the scene. Both Meinhold and Lizotte testified that Lizotte arrived shortly after the arrest and conducted the search of Johnston's purse.

4

Johnston was found guilty of tampering with or fabricating physical evidence and the lesser included offense of criminal possession of dangerous drugs. However, the remaining charge of criminal forfeiture was dismissed by the State. Johnston was sentenced to ten years at the Montana Women's Prison. Johnston now appeals.

¶8    On appeal, Johnston argues the District Court abused its discretion by failing to hold a suppression hearing after Johnston alleged facts that entitled her to relief. The State argues that Johnston waived her right to a hearing when the District Court gave her an opportunity to request one and she failed to do so. Additionally, the State argues that the District Court correctly denied Johnston's motion to suppress.

¶9    We review a district court's denial of a motion to suppress evidence to determine whether "the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law." *State v. Vegas*, 2020 MT 121, ¶ 8, 400 Mont. 75, 463 P.3d 455 (citing *State v. Ruggirello*, 2008 MT 8, ¶ 15, 341 Mont. 88, 176 P.3d 252). "A court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed." *Ruggirello*, ¶ 15. "We review a district court's denial of an evidentiary hearing for a clear abuse of discretion." *State v. Terronez*, 2017 MT 296, ¶ 19, 389 Mont. 421, 406 P.3d 947 (citing *State v. Schulke*, 2005 MT 77, ¶ 10, 326 Mont. 390, 109 P.3d 744).

¶10    First, we consider whether the District Court erred when it failed to hold a hearing on Johnston's motion to suppress. Johnston argued that Meinhold had searched her purse prior to Lizotte arriving. Because the State argued Lizotte had searched her purse, Johnston

claims there was a dispute of fact requiring an evidentiary hearing pursuant to § 46-13-302, MCA.

¶11 Section 46-13-302, MCA, in its entirety, states:

(1) A defendant aggrieved by an unlawful search and seizure may move the court to suppress as evidence anything obtained by the unlawful search and seizure.
(2) If the motion states facts that, if true, would show that the evidence should be suppressed, the court shall hear the merits of the motion at the omnibus hearing or at a later date if the court orders.
(3) If the motion is granted, the evidence is not admissible at trial.

Johnston contends that her pro se motion to suppress met the requirements under § 46-13-302, MCA, and therefore the District Court was required to hold a hearing. The State responds that although § 46-13-302(2), MCA, does require a hearing on a motion to suppress, Johnston waived that right under the facts of this case. Specifically, section V of the Omnibus Hearing Memorandum addressed suppression motions and provided: "NOTE: The motions will be deemed submitted *without a hearing* unless a Request for Hearing is submitted prior to the end of the briefing period." (Emphasis added). On January 5, 2021, the District Court again communicated this requirement to both parties:

Now, I read this document that Ms. Johnston filed. And it appears to be relying on some entries in a 9-1-1 dispatch log or tape. It is referring to points in a recording. I couldn't quite make heads or tails of it without seeing the recording. But, *regardless, if we need to have an evidentiary hearing on this matter, please ask for it conspicuously in writing*.

(Emphasis added). Neither Johnston nor her counsel requested a hearing in writing despite having signed the Omnibus Hearing Memorandum and having been informed again by the court of that requirement.

6

¶12 We conclude based on this record that Johnston waived her right to an evidentiary hearing. Here, the District Court specified in its Omnibus Hearing Memorandum—which counsel for both parties signed—that "motions will be deemed submitted without a hearing" unless requested in writing. A hearing was never requested in writing and therefore the hearing was waived. As the State correctly points out, "[t]o conclude otherwise would require a court to hold a hearing even when the defendant does not intend to subpoena any witnesses or present any evidence . . . [and] would be a waste of judicial resources."

¶13 Next, we consider Johnston's argument that the search of her purse was an unreasonable warrantless search mandating suppression. Johnston argues only Lizotte was authorized to search her purse and not the federal marshals. Johnston claimed that federal marshals searched her purse while the State argued the search was performed by Lizotte. Both sides presented their arguments to the District Court. The District Court—having heard evidence from both sides—concluded that Lizotte searched Johnston's purse and denied the motion to suppress.

¶14 On appeal, Johnston argues she filed two motions to suppress. The first handwritten motion was filed by Johnston on December 23, 2020. The second handwritten motion was filed by Johnston on July 28, 2021. However, the December 23, 2020, motion was never docketed as it was submitted by Johnston herself while she had counsel. The District Court explained to Johnston on January 5, 2021:

> Now, Ms. Johnston, you've got an attorney. I can't be having you filing stuff on your own without going through your attorney. So[,] I'm going to refer

> this matter to Ms. Burbridge and she can look at it and talk to you about it and decide whether she wants to pursue this or not.

The District Court clarified that it was "not going to consider it until [it] hear[d] further from Ms. Burbridge, okay?" Johnston's motion was never filed by Ms. Burbridge.

¶15    Furthermore, when Johnston later received permission to represent herself, the District Court clarified with Johnston, "[s]o, is that paperwork that was filed on July 28th what you are relying on at this point?" To which Johnston replied, "[y]es, I am." At no point did Johnston request that the December 23, 2020, motion be revived. Therefore, the July 28, 2021, motion to suppress is the only motion this Court will consider on appeal. In her July 28, 2021, motion to suppress, Johnston argued that Meinhold searched her purse before Lizotte arrived at the scene. In its Order regarding Johnston's motion to suppress, the District Court determined that Lizotte had searched her purse and that she had failed to state any grounds upon which the search of her purse or the apartment could be suppressed.

¶16    Here, the District Court considered the evidence presented from both parties and determined that Lizotte had been the officer who searched Johnston's purse. Because Lizotte, as Johnston's probation officer, was authorized to search Johnston's purse, the District Court denied Johnston's motion to suppress. Based on this evidence we conclude the District Court did not err. Two officers provided consistent statements detailing how Lizotte searched Johnston's purse. Additionally, it is undisputed that Lizotte was present at the scene.

¶17    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents

no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶18 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR